31 A.3d 1235 (2011)
2011 ME 110
DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, in Trust for the Registered Holders of Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2006-R2
v.
Donald P. PELLETIER et al.
Docket: Aro-10-622.
Supreme Judicial Court of Maine.
Argued: June 13, 2011.
Decided: August 9, 2011.
Revised: November 15, 2011.
Elizabeth M. Crowe, Esq., (orally), Bendett & McHugh, P.C., Farmington, Connecticut, for the appellant Deutsche Bank National Trust Company, as Trustee
Eugene J. McLaughlin, Esq., (orally), Pine Tree Legal Assistance, Inc., Presque Isle, for the appellees Donald and Kim Pelletier
Jonathan R. Bolton, Asst. Atty. Gen., Office of the Attorney General, Augusta, on the recommendation for clarification, for Bureau of Financial Institutions and Bureau of Consumer Credit Protection
Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.
*1236 SAUFLEY, C.J.
[¶ 1] Deutsche Bank National Trust Company, as trustee in trust for the registered holders of Ameriquest Mortgage Securities Inc., asset-backed pass-through certificates, series 2006-R2, appeals from a summary judgment entered in the District Court (Fort Kent, Soucy, J.) in favor of Donald P. Pelletier and Kim M. Pelletier on the bank's complaint for foreclosure.[*] The court concluded that Deutsche Bank had failed to dispute facts asserted by the Pelletiers demonstrating that they had asserted a right of rescission. Although we affirm the court's determination that the Pelletiers were entitled to rescission, we remand the matter for further proceedings to effectuate that rescission.

I. BACKGROUND
[¶ 2] The facts are taken from the unopposed statement of material facts and supporting evidence presented by the Pelletiers. In 2006, the Pelletiers applied to Ameriquest by telephone to refinance their existing mortgage on their residence. They were told that they would get a fixed rate mortgage loan for $80,000 to pay off the existing mortgage debt of $46,000 and some other small debts. They were also told that Ameriquest would pay for the appraisal fee. Despite the bank's assertions to the contrary, the Pelletiers did not receive a good-faith estimate, a notice of the three-day right of rescission, or any copies of loan documents before or at the time of the closing, which occurred on January 18, 2006.
[¶ 3] The Pelletiers' signatures appear on forms indicating that, before or at the time of closing on the note and mortgage with Ameriquest, they received notices required by the federal and state Truth-in-Lending Acts (TILA and MeTILA), codified at 15 U.S.C.S. §§ 1601-1667f (Lexis-Nexis 2011)[1] and 9-A M.R.S. §§ 8-101 to 8-404 (2010), including the provisions of the Home Ownership and Equity Protection Act of 1994 (HOEPA), 15 U.S.C.S. § 1639; 9-A M.R.S. §§ 8-206-E, 8-206-H to 8-206-J, and by the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C.S. §§ 2601-2617 (LexisNexis 2009). The Pelletiers' unrebutted affidavits offered in support of summary judgment aver, however, that Ameriquest did not, in fact, provide them with these notices or notify them that they had three days to rescind the contract after closing. They also assert by affidavit that they were improperly charged for the appraisal and that the HUD settlement statement exaggerates the value that they received from the bank after closing by approximately $4,000.
[¶ 4] Close to two years after the closing, the Pelletiers' payments were increased. They could not afford these new payments and called the bank to see why their payments had gone up. The bank informed the Pelletiers that they had an adjustable rate note.
[¶ 5] On October 28, 2008, Deutsche Bank National Trust Company, the asserted current holder of the note and mortgage, filed a complaint for foreclosure and declared due the entire principal plus charges, fees, interest, and escrow advances, for a total of $85,892.78 as of October 27, 2008. The Pelletiers, who were *1237 self-represented at the time, filed a motion to dismiss and asserted affirmative defenses through which they sought rescission as a remedy. In support of their motion, they filed an affidavit attaching the Housing and Urban Development settlement statement that Ameriquest produced and the TILA disclosure form, which was signed by both of the Pelletiers.
[¶ 6] Deutsche Bank objected to the motion to dismiss. After proceedings that are not relevant here, the court entered a procedural order on August 13, 2010, in which it appropriately notified the parties that the motion to dismiss with affirmative defenses would be treated as an answer generally denying the claim for relief and asserting a right of rescission, and as a motion for summary judgment. See M.R. Civ. P. 12(b).[2] The court set a schedule allowing both parties the opportunity to submit materials, including affidavits, to support or oppose the motion for summary judgment through August 27, 2010.
[¶ 7] The Pelletiers filed a statement of material facts and supporting affidavits with exhibits. See M.R. Civ. P. 56(h)(1). Deutsche Bank moved for enlargement of time to file an affidavit, after which it submitted an incomplete, unsigned affidavit containing blank spaces for the affiant's name and title, and the date. The bank did not file an opposing statement of material facts pursuant to M.R. Civ. P. 56(h)(2) or move for enlargement of time to file such a statement. Nor did Deutsche Bank ever file a completed affidavit.
[¶ 8] On this record, with no statement of material facts or evidence having been filed by the bank, the court entered a summary judgment for the Pelletiers on October 19, 2010. The court ruled that, because the bank offered no evidence to oppose the facts offered by the Pelletiers in support of rescission, and because the evidence offered by the Pelletiers established that they had timely notified the bank of their exercise of the rescission right, they were entitled to judgment on their demand for rescission as a matter of law. The court denied the bank's subsequent "motion for articulation," which the court treated as a motion for further findings of fact and conclusions of law, see M.R. Civ. P. 52, and it determined that the bank's motion to file a late affidavit was moot because no signed affidavit had been filed. The bank appealed.

II. DISCUSSION
[¶ 9] Pursuant to TILA,[3] the right of rescission may be exercised "in the case of any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C.S. § 1635(a); see 9-A M.R.S. § 8-204(1).[4] There is no dispute that the debt *1238 at issue here is secured by the Pelletiers' principal dwelling. Although the statute exempts certain residential mortgage transactions entered into "to finance the acquisition or initial construction" of a consumer's dwelling, 15 U.S.C.S. §§ 1602(x), 1635(e)(1); see 9-A M.R.S. §§ 8-103(1-A)(X), 8-204(5)(A), the loan at issue here was designed to refinance the Pelletiers' existing mortgage and pay off other debts.
[¶ 10] If proper notice of the right to rescind and other required notices and material disclosures have been given to the consumer, the consumer may exercise the right to rescind only within the three days after the transaction occurs. 15 U.S.C.S. § 1635(a); see 9-A M.R.S. § 8-204(1). If the consumer has not received notices and material disclosures, however, the right to rescind may be exercised after the three-day period has expired, but the right must still be exercised within three years after the consummation of the transaction:
An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor. . . .
15 U.S.C.S. § 1635(f); see 9-A M.R.S. § 8-204(6); see also 12 C.F.R. § 226.15(a)(2), (3) (2011). Delivery of notices and material disclosures is presumed unless the fact of delivery is rebutted with evidence. 15 U.S.C.S. § 1635(c); see 9-A M.R.S. § 8-204(3).
[¶ 11] The Pelletiers offered evidence in support of summary judgment indicating that, although they signed documents at Ameriquest's request acknowledging their receipt of the required notices and disclosures, they in fact received no such notices or disclosures. The Pelletiers thereby provided evidence to rebut the statutory presumption of delivery. See 15 U.S.C.S. § 1635(c); see also 9-A M.R.S. § 8-204(3). In the absence of any contrary evidence offered by the bank, the court did not err in accepting the Pelletiers' evidence as true. See M.R. Civ. P. 56(h)(4).[5]
[¶ 12] Because the court's order reached only the point of determining that the Pelletiers were entitled to rescission, however, further consideration is necessary to effectuate that rescission. See 15 U.S.C.S. § 1635(b); see also 9-A M.R.S. § 8-204(2). As with the rescission remedy available in equity, see Getchell v. Kirkby, 113 Me. 91, 94, 92 A. 1007, 1008 (1915), the relevant TILA statute contemplates the parties' return to their pre-contract circumstances through the mutual return and tender of funds and property:
Return of money or property following rescission. When an obligor exercises his right to rescind under subsection *1239 (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

15 U.S.C.S. § 1635(b) (emphasis added); see 9-A M.R.S. § 8-204(2).
[¶ 13] Although the Pelletiers have not yet tendered to the bank the proceeds of the loan that they received from Ameriquest, the statute specifies that tender is not required until the creditor has performed its obligations under the law. 15 U.S.C.S. § 1635(b). The facts established in this summary judgment record indicate that the creditorthe bankhas not yet performed its obligation to "return to the obligor any money or property given as earnest money, downpayment, or otherwise." Id. Thus, the Pelletiers were not yet required to tender the proceeds to the bank, and the court did not err in imposing the remedy of rescission on summary judgment. Further proceedings are necessary, however, to define the scope of that remedy. Because the parties have not followed the process specified by statute with precision and clarity, the court may "otherwise order[]" appropriate procedures to give effect to the remedy of rescission. Id. Accordingly, although we affirm the court's judgment granting the Pelletiers' request for rescission, we remand the matter for the court to determine how this rescission should be effectuated.
The entry is:
Summary judgment for the Pelletiers on the foreclosure complaint affirmed. Remanded for further proceedings to effectuate the rescission of the January 18, 2006, agreements.
NOTES
[*] Following the certification of the original opinion in this case, Deutsche Bank Nat'l Trust Co. v. Pelletier, 2011 ME 87, 2011 WL 3452085, the Attorney General recommended that the Court clarify the law stated in footnote 4. After notice and an opportunity to be heard, neither party objected to, or suggested changes to, the amended language. Accordingly, this opinion is reissued, with the change reflected in footnote 4.
[1] These statutes were recently amended, but the amendments were not in effect at the relevant time. See Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub.L. No. 111-203, §§ 1096, 1400-1440(2010).
[2] The Rule provides:

If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
M.R. Civ. P. 12(b).
[3] Although the court did not explicitly state that it was relying on TILA as the basis for the rescission remedy, we infer this basis for rescission on this summary judgment record.
[4] In the 1980s, Maine obtained an exemption from the application of the federal TILA from the Federal Reserve Board by showing that MeTILA's requirements were "substantially similar" to those imposed under the federal law and that there was "adequate provision for enforcement." 15 U.S.C.S. § 1633 (Lexis-Nexis 2011); 9-A M.R.S. § 8-107 (2010); L.D. 213, Statement of Fact (110th Legis.1981); see also 12 C.F.R. § 226.29(a) (2011). The federal TILA was amended in some ways after Maine obtained the exemption; no revocation of the existing exemption, and no further explicit exemption, is suggested in the record before us. See 15 U.S.C.S. § 1639 (LexisNexis 2011) (codifying the Home Ownership and Equity Protection Act of 1994, Pub.L. No. 103-325, § 152, 108 Stat. 2160, 2191-94 (1994)). Because the Maine and federal TILA statutes contain identical requirements for rescission, however, we need not determine whether the state or federal statutes apply, and we provide citations to both the federal and state statutes throughout our discussion.
[5] Because of the bank's failure to contest the facts, we do not disturb the court's determination that the Pelletiers provided notice of their intention to rescind within three years after the closing, in compliance with TILA requirements, by delivering to the bank their motion to dismiss. 15 U.S.C.S. § 1635(f) (LexisNexis 2011); see 9-A M.R.S. § 8-204(6) (2010); see also 12 C.F.R. § 226.15(a)(2), (3) (2011). The closing occurred on January 18, 2006, and the Pelletiers sent the bank a copy of their motion to dismiss, which the court accepted as a demand for rescission, on December 26, 2008.