STATE OF MAINE

Cumberland, ss.

BUSINESS AND CONSUMER DOCKET
Location: Portland
Docket No. BCD-RE-10-08

DAVID BORDETSKY,

        Plaintiff/
        Counterclaim Defendant

    v.

MARLENE CHARRON,

        Defendant/
        Counterclaim Plaintiff,

and

PALISADES COLLECTIONS, LLC and
PINNACLE CREDIT SERVICES, LLC,

        Parties-in-Interest

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MARLENE CHARRON,

        Third Party Plaintiff

    v.

PNF REALTY, INC., LAWRENCE
P. MCMANUS, JR., GREGORY
KOUTRELAKOS, JANE M. DUGAS,
WALTER W. CHENEY, Trustee of the
FLOROS REALTY TRUST, and
THOMAS J. MCSHERA, Trustee of the
KATHLEEN M. MCSHERA 1994
TRUST,

        Third-party Defendants

**JUDGMENT OF FORECLOSURE AND
SALE**

This matter came before the Court after issuance of this Court's Decision and Order

dated August 16, 2011 (the "Decision") in which this court, after trial, set forth findings of fact

and conclusions of law and requested further submissions from the parties with respect to certain additional issues. In light of subsequent events, the Court must first correct certain portions of the Decision.

The Decision relied in part upon the Law Court's initial decision in *Deutsche Bank Nat'l Trust Co. v. Pelletier*, 2011 ME 87, -- A.3d ---., specifically footnote 4 of that decision that concluded Maine's Consumer Credit Code (the "Code") did not apply to the mortgage transaction and applied federal Truth in Lending Act (TILA) provisions. *Id.* ¶ 9 n.4. The Law Court, at the request of the Attorney General, later revised footnote 4 to read: "Because the Maine and federal TILA statutes contain identical requirements for rescission, however, we need not determine whether the state or federal statutes apply, and we provide citations to both the federal and state statutes throughout our discussion." *Deutsche Bank Nat'l Trust Co. v. Pelletier*, 2011 ME 110, ¶ 9 n.4, -- A.3d ---. (*See also* Letter to the Court from the Maine Bureau of Consumer Credit Protection dated August 30, 11, and attachments.) In light of this revision, the Court's conclusion regarding the applicable law must also be revised to apply the substantive Code provisions in the HOEPA analysis and not federal standards. *See Belini v. Wash. Mut. Bank, FA*, 412 F.3d 17, 26 (1st Cir. 2005) ("a creditor can be held liable under 15 U.S.C. § 1640 for failing to comply with any *state* law requirement that is equivalent to an actionable requirement under TILA").

As noted in the Decision, however, because Maine adopted Regulation Z, 12 C.F.R. § 226 (2002), *see* Office of Consumer Credit Regulation, Truth-in-Lending, Regulation Z-2, § 2 (July 28, 2002) (on file with the Maine Secretary of State), the substantive provisions of the Code and HOEPA for high-rate, high-fee mortgages are nearly identical. The outcome for five of the six alleged HOEPA violations is the same under the Code, and, given that the Court included parallel citations to the Code in the Decision, need not be discussed any further

2

As indicated in the Decision, however, there is one allegation where application of the Code yields a different outcome: including prohibited "due on demand" provisions in the First Mortgage Loan and in the Second Mortgage Loan. The Code's provision regarding due on demand features is more stringent than that found in Regulations Z. The Code states:

> A high-rate, high-fee mortgage may not include a call provision that permits the creditor, in its sole discretion, to accelerate the indebtedness. This subsection does not apply when repayment of the loan is accelerated by a bona fide default, pursuant to a due-on-sale provision or pursuant to another provision of the loan agreement unrelated to the payment schedule, but not limited to, bankruptcy or receivership.

9-A M.R.S. § 8-206-A(16-B) (2006).[1] Applying this provision to the two due on demand provisions in the First and Second Mortgage Loans (*see* Decision 18-19; Exh. I, § 6(B)(5)-(6); Exh. U, § 6(B)(5)(6)), the Court concludes that neither of the provisions fall into the exceptions to section 8-206-A(16-B), i.e. a bona fide default, a due on sale clause, or a loan provision unrelated to payment.

The Court concludes that "in your judgment" as used in the First and Second Mortgage Notes is synonymous with "sole discretion" as used in section 8-206-A(16-B). Sole discretion is "[a]n individual's power to make decision without anyone else's advice or consent." Black's Law Dictionary 499 (8th ed. 2004). The First and Second Mortgage Notes give the Plaintiff David Bordetsky (the "Plaintiff") the discretion to accelerate the loans should he determine that there has been or may be an impairment of his interest. As such, these provisions violate

---

[1] At the time the Loans were closed, Regulation Z prohibited a loan subject to HOEPA from including:

> A demand feature that permits the creditor to terminate the loan in advance of the original maturity date and to demand repayment of the entire outstanding balance, except in the following circumstances:
> (i)  There is fraud or material misrepresentation by the consumer in connection with the loan;
> (ii)  The consumer fails to meet the repayment terms of the agreement for any outstanding balance; or
> (iii)  There is any action or inaction by the consumer that adversely affects the creditor's security for the loan, or any right of the creditor in such security.

12 C.F.R. § 226.32(d)(8) (2002).

section 8-206-A(16-B) because they include a due on demand provision within the creditor's sole discretion and do not fall within an exception. Because the Court has already awarded the maximum amount of damages it can under 15 U.S.C.S. § 1640(a)(2) (LexisNexis 2005), there is no change in the amount of damages awarded for HOEPA violations.

Turning to the remaining issues, upon consideration of the parties' submissions, and incorporating the terms of the Decision as amended herein, the court further finds and concludes as follows:

1. The Plaintiff has at all times remained as owner of the loan evidenced by the promissory note (the "First Note") dated May 9, 2006 in the original principal amount of $180,000.00, from Marlene Charron (the "Defendant") and her brother, David L. Charron ("Mr. Charron") to Plaintiff, subject to security interests in the same held by the remaining plaintiffs (the "Assignee Plaintiffs") as set forth in the Decision.

2. In a mortgage (the "First Mortgage") recorded in the York County Registry of Deeds at Book 14832, Page 658 on May 10, 2006, Defendant and Mr. Charron mortgaged the property (the "Property") then owned by them which had and has a street address of 456 Atlantic Avenue, Wells, Maine to Plaintiff to secure their obligations under the terms of the First Note. Plaintiff has at all times remained as owner of the First Mortgage and, accordingly, is the "mortgagee" under the terms of that Mortgage.

3. Plaintiff has at all times remained as owner of the loan evidenced by the promissory note (the "Second Note") dated July 30, 2007 in the original principal amount of $50,000.00 from Defendant and Mr. Charron to Plaintiff, subject to security interests in the same held by PNF Realty, Inc. ("PNF") as set forth in the Decision.

4. In a mortgage (the "Second Mortgage") recorded in the York County Registry of Deeds at Book 15281, Page 442 on July 30, 2007, Defendant and Mr. Charron mortgaged the

4

Property to Plaintiff to secure their obligations under the terms of the Second Note. Plaintiff has at all times remained as owner of the Second Mortgage and, accordingly, is the "mortgagee" under the terms of that Mortgage.

5. Plaintiff, either personally, or through his attorneys, has maintained and retained possession of the First Note and of the Second Note since the closing of the loans which they evidence, and his attorneys now have possession of the same on his behalf.

6. Based on the foregoing, and with the concurrence of both parties, the court concludes that Plaintiff has standing to pursue the claims that he has asserted in this case. *See HSBC Bank USA, N.A. v. Gabay*, 2011 ME 101, ¶¶ 12-18, 28 A.3d 1158; *Kondaur Cap. Corp. v. Hankins*, 2011 ME 82, ¶ 10, 10 A.3d 718; *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶¶ 11-15, 2 A.3d 289;

7. As noted in the Decision, Mr. Charron provided Plaintiff with a deed in lieu of foreclosure, transferring his interest in the Property to Plaintiff. In exchange, Plaintiff released Mr. Charron from any further personal liability upon the loans evidenced by the First Note and the Second Note, but explicitly reserved the right to collect all amounts then outstanding under the terms of the First Note and the Second Note from the proceeds of any foreclosure of the First Mortgage or the Second Mortgage. (*See* Stip. Ex. HH.)

8. By statute, Defendant is entitled to a credit for the value of anything that Plaintiff received as part of his settlement with Mr. Charron against what is owed under the terms of the First Loan and the Second Loan. *See* 14 M.R.S. § 13 (2011). Under Maine law, a deed in lieu of foreclosure does not merge with the mortgage itself, unless this is the actual intent of the parties, so that the property remains subject to the mortgage, as collateral for the full amount of the obligation secured by that mortgage, even after execution and delivery of the deed in lieu. *See Campbell v. Knights*, 24 Me. 332 (1844) ("The general rule is, that the mortgage

5

may be considered as still subsisting, when it is for the interest of the party that it should be, to protect himself against any other charge or incumbrance upon the estate."). (*See* Stip. Exh. HH.)

9. Such is the case here. (*See* Stip. Exh. HH.) Accordingly, any credit to be awarded Defendant for the value of the deed provided to Plaintiff by Mr. Charron would be applied only to her personal liability upon the obligations evidenced by the First Note and the Second Note, and not to the foreclosure upon the Property.

10. Moreover, Plaintiff has indicated that he will waive any right to seek a deficiency from Defendant, and this Judgment implements that stipulation by providing that, assuming the property is sold under the foreclosure statute, the amount received will be deemed to satisfy Defendant's entire liability in this case, and that she is entitled to a satisfaction of judgment to the effect. Therefore, the issue of how to value the deed in lieu of foreclosure is likely moot.[2]

11. The only scenario that would render the issue other than moot is if the amount that is received on foreclosure sale (or, if there is a challenge to the method of sale, the amount that should have been received on sale) is such as to raise the question whether Defendant should be entitled to receive a portion of the proceeds as equity. In that event, the value of what Plaintiff received in the form of the deed would have to be determined. However, that scenario may never materialize, so the additional analysis it would trigger can be deferred to when and if the occasion arises. To assure that the court retains a practical ability to award relief should the issue arise, this Judgment requires that, if Defendant challenges the report of sale, any surplus shall be held in escrow until the court approves Plaintiff's report of sale.

---

[2] But for Plaintiff's waiver of any deficiency claim, the Court likely would apply equitable principles and conclude that the Defendant has "an equitable right to have the land pay the mortgage before [her] personal liability is called upon." *Licursi v. Sweeny*, 594 A.2d 396, 421 (Vt. 1991) (quoting G. NELSON AND D. WHITMAN, REAL ESTATE FINANCE LAW 467-68 (2d ed. 1985)). *See also Bd. of Trs. of the Gen. Ret. Sys. of the City of Detroit v. Ren-Cen Indoor Tennis & Racket Club*, 377 N.W. 2d 432 (Mich. 1985); *Wright v. Anderson*, 253 NW 484, 487 (So. Dak., 1934); RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 8.5 (1997).

6

12. As of the dates on which Defendant and Plaintiff entered into the loans which are at issue in this case, both TILA and the Code provided, in identical language, that any lender who failed to comply with the TIL provisions of the Act or the Code was liable to a consumer in an amount equal to "twice the amount of any finance charge in connection with the transaction," provided that this statutory liability was, in the case of a loan secured by real property or a dwelling, limited to an amount which could not be less than $200 or greater than $2,000. *See* 9-A M.R.S. § 8-208(1)(A) (2006);15 U.S.C.S § 1640(a)(1) (LexisNexis 2005).

13. In the Decision, this Court issued an award in the amount of $2,000 under each of these identically worded provisions, for a total of $4,000 for both the First and Second loan transactions. (*See* Decision at 35, 38.) Plaintiff has asked that the Judgment reflect an award of only $2,000 per loan instead of $4,000, on the ground that to make separate awards under each statute for the same transaction would grant Defendant double recovery.

14. Plaintiff's argument is that the statutory damages provisions in both the Act and the Code have the same purpose: to enable a consumer to recover, by way of liquidated damages, losses which might otherwise be unprovable. However, the analogy to a contractual liquidated damages provision is not entirely apt—whereas a liquidated damages remedy usually substitutes for an actual damages remedy, both the Act and the applicable version of the Code permit recovery of actual damages as well as the statutory damages. *See* 15 U.S.C.S. § 1640(a)(1); 9-A M.R.S. § 8-208 (2006).

15. The fact that both the federal and state statutes permit recovery of actual damages and provide separately for statutory damages irrespective of actual loss plainly confirms that the latter provisions have a purpose that transcends compensation and extends to deterrence and punishment.

7

16. As a result, awarding statutory damages under both the State and federal provisions does not constitute an impermissible duplication of damages. Accordingly, the Court declines to adopt Plaintiff's suggestion that the Decision be modified to provide for only one award of $2000 under 9-A M.R.S. § 8-208(1)(A) and 15 U.S.C.S. § 1640(a)(1) rather than two awards totaling $4000.

17. In the Decision, this Court asked if Plaintiff should be required to market and sell his own half interest in the Property as part of the foreclosure process. (*See* Decision at 40.) The parties agree that such is intended to be the case here, and this Judgment therefore so provides.

18. A consumer is entitled to an award of reasonable attorney's fees and costs incurred in successfully enforcing liability for actual damages under § 1640(a)(1) of TILA and for statutory damages under § 1640(a)(2) of TILA. *See* 15 U.S.C.S. § 1640(a)(3) (LexisNexis 2005).

19. In this case, Defendant asserted several counterclaims and affirmative defenses against Plaintiff, the Assignee Plaintiffs and PNF. She did not, however, prevail with respect to her defenses of unconscionability and of accord and satisfaction.[3] (*See* Decision at 7-11.) Additionally, she did not prevail with respect to her claims under Maine's Unfair Trade Practices Act, or for rescission. (*See* Decision at 29-34.) Furthermore she did not prevail on her claims that Plaintiff: (a) improperly refinanced an earlier loan; (b) collected payments in advance from the proceeds of the loans at issue in this case; (c) included prohibited "due on demand" provisions in the loan documents; (d) failed to provide certain mandatory disclosures

---

[3] She also did not prevail with respect to defenses of unclean hands, illegality and commercial impracticability asserted in her pleadings, but not pursued at trial or in post-trial briefing. (*See* Decision at 7.)

as required by the Act and the Code. (*See* Decision at 15-16, 16-19, 22-23, 26-27.) Finally, she did not prevail on her claims against the Assignee Plaintiffs and PNF. (*See* Decision at 38.)

20. The Defendant did prevail on her claim that Plaintiff did not provide her with disclosures required by 15 U.S.C.S. § 1639(a) (LexisNexis 2005) (the "HOEPA Disclosures") and 9-A M.R.S. § 8-206-A(1) (2006) (the "High-Rate Disclosures") at least three days prior to the consummation of the loans evidenced by the First Note and the Second Note. (*See* Decision at 16, 26.) She also succeeded on her claim that Plaintiff engaged in a pattern and practice of extending credit without regard to the borrowers' repayment ability in violation of 15 U.S.C.S. § 1639(h) (LexisNexis 2005), and failing to report her payment history to a nationally recognized consumer reporting agency as required by 9-A M.R.S. § 8-206-A(11-A) (2006). Finally, as clarified in this judgment, the Defendant also prevailed on her claim that Plaintiff including prohibited "due on demand" provisions in the First Mortgage Loan and in the Second Mortgage Loan in violation of 9-A M.R.S. § 8-206-A(16-B).

21. These violations formed the basis for this Court's award of statutory damages under 15 U.S.C.S. § 1640(a) and 9-A M.R.S. § 8-208(1). (*See* Decision at 34-35, 37-38; *supra* at 4.) That Plaintiff engaged in a pattern and practice of extending credit without regard to the borrowers' repayment ability in violation of 15 U.S.C.S. § 1639(h) also formed the basis for enhanced damages awarded to Defendant under 15 U.S.C.S § 1640(a)(4) (LexisNexis 2005). (*See* Decision at 35-36.)

22. Where a party:

has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the [party]'s claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a [party] to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). *See also Poussard v. Commercial Credit Plan, Inc. of Lewiston*, 479 A.2d 881, 885-886 (1984) (adopting *Hensley* standards in determining appropriate level of awards of attorney's fees for TILA violations).

23.     On the other hand, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Advanced Const. Corp. v. Pilecki*, 2006 ME 84, ¶ 32, 901 A.2d 189 (quoting *Hensley*, 461 U.S. at 435).

24.     Where the litigation is complex, lengthy and involves many hours of work, whether the litigant is a "prevailing party" may "say little about whether the expenditure of counsel's time was reasonable." *Hensley*, 461 U.S. at 436. So, for example, if a party prevails on only one out of six claims asserted under a statute, granting an award for work performed on all of these claims would be excessive. *Id.* "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440.

25.     In this case, Defendant prevailed on claims which were based upon four specific and separable factual issues. Plaintiff stipulated that he did not provide HOEPA Disclosures and High-Rate Disclosures on a timely basis, and did not dispute that some award was appropriately made against him for this violation of the Code and the Act. Additionally, he stipulated that he did not report his credit experience with Defendant to a nationally recognized consumer reporting agency. Thus, reasonable costs incurred by Defendant in pursuing these claims were, or should have been, minimal.

26.    The only substantial factual and legal disputes between the parties with respect to those claims upon which Defendant prevailed and for which she is entitled to attorney's fees was whether Plaintiff engaged in a pattern and practice of extending credit without regard to the borrowers' repayment ability in violation of 15 U.S.C.S. § 1639(h) and whether Plaintiff including prohibited "due on demand" provisions in the First Mortgage Loan and in the Second Mortgage Loan in violation of 9-A M.R.S. § 8-206-A(16-B). There was also a more minor legal issue as to whether Plaintiff was excused from making reports to a nationally recognized consumer-reporting agency because those agencies had informed him that they would not accept the same.

27.    A party's failure to allocate her attorney's fees between the various claims in this case does not prevent an award of such fees with respect to those claims on which she prevailed and for which she is entitled to an award of such fees, provided the court has an adequate basis for making an award. *See VanVoorhees v. Dodge*, 679 A.2d 1077, 1082 (1996).

28.    Here, Michael J. O'Toole, Esquire, counsel for Defendant Charron, has filed a revised fee affidavit which includes net fees and disbursements in the amount of $37,720.10, incurred during the period from December 21, 2009 through September 8, 2011, 2011. In his affidavit, Mr. O'Toole then subtracted 21.4 hours of billed time which he clearly spent on claims on which Defendant did not prevail. He further estimated that about 66% of his time spent on preparing his Trial Brief and Proposed Findings and Conclusions of Law was related to claims of Plaintiff's alleged violations of state and federal Truth in Lending laws and regulations. The Defendant prevailed on some, but not all, of those claims. However, given the complexity of the issues raised, the common core of facts and the intertwining legal theories involved in these claims and the overall outcome achieved by Defendant, the Court will not attempt to further apportion this fee request between fee and non-fee claims. After subtracting

11

that time obviously not spent on successful claims and 33% of the time clearly spent on "mixed" issues, Mr. O'Toole estimated that the amount of fees and disbursements incurred by Defendant in this period for claims and matters upon which she prevailed totaled $30,181.10. Mr. O'Toole's estimate, as well as the net fees and disbursements in this amount, seem reasonable and, accordingly, these fees and disbursements in the amount of $30,181.10 are allowed to Defendant. However, Mr. O'Toole's estimate did not take—and could not have taken—into account the correction to the Decision resulting from the correction in the Law Court's *Pelletier* decision, so the court awards an additional $2,000 to the Defendant for the fact that she prevailed on the "due on demand" issue under the Maine Code.

29. Under both the terms of the loan documents, as well as by statute, Plaintiff, the Assignee Plaintiffs, and PNF are also entitled to collect attorney's fees in connection with those portions of this case upon which they prevailed. *See* 14 M.R.S. § 6101 (2010). Counsel for those parties has submitted two affidavits regarding such fees.

30. The first of these was executed by David J. Jones, Esquire, and involves fees in the amount of $4,707.00, plus disbursements of $455.45, for a total of $5,162.45, incurred during the period from May 20, 2009 through October 28, 2010. It appears that very little, if any, of these fees, and none of these disbursements, were incurred in connection with Defendant's claims, and they are reasonable in amount. Accordingly, these fees and disbursements are allowed in full.

31. The second fee affidavit filed by counsel for Plaintiff, the Assignee Plaintiffs and PNF was executed by F. Bruce Sleeper, Esquire and includes fees in the amount of $21,752.50 and disbursements of $2,453.51, for a total of $24,206.01, incurred during the period from November 9, 2010 through May 13, 2011. In his affidavit, Mr. Sleeper estimates that about

12

27% of his time, as well as a similar percentage of the $976.08 in Westlaw charges included in these disbursements, related to claims upon which Defendant prevailed.

32. If this percentage is subtracted from the attorney fee figure and the Westlaw figure, the resulting amounts are $15,879.32 and $712.54. These amounts, with the remaining disbursements of $1,477.43, total $18,069.29. Mr. Sleeper's estimate, as well as the fees and disbursements in this latter amount, seem reasonable. However, that estimate did not take into account the fact that the Defendant has prevailed on the "due on demand" issue under the Code, so the court subtracts $2,000 from this figure, and awards fees and disbursements in the amount of $16,069.29 for this period.

33. Mr. Sleeper's affidavit also indicates that additional fees in the amount of $752.50, as well as disbursements in the amount of $177.84, for a total of $930.34 accrued during the period after May 13, 2011 through September 8, 2011. Finally, he estimates that his clients will incur additional fees and disbursements in the amount of $1,700.00 after September 8, 2011. He states that none of the fees and disbursements incurred after May 13, 2011 related to any claims on which Defendant prevailed. Again, these fees and disbursements appear reasonable and an additional $2,630.34 is awarded for the same. Adding that figure to the amounts of $5,162.45 and $16,069.29 results in a total award of $25,862.08 in fees and disbursements to Mr. Sleeper's clients.

34. Based upon the foregoing, as well as the Decision, it is hereby found that:

a. The Defendant has breached the condition of the First Note and the First Mortgage.

b. As of October 21, 2011, Plaintiff was owed the following under the terms of the First Note and the First Mortgage:

| | |
|---|---|
| Principal balance | $180,000.00 |
| Accrued interest | $ 65,340.11 |

13

| | |
|---|---|
| Late charges | $ 1,485.00 |
| Attorney's fees | $ 25,862.08 |
| TOTAL | $272,687.19 |

    c.    From the foregoing, Defendant is entitled to offset the following amounts:

| | |
|---|---|
| Damages awarded under 15 U.S.C. § 1640(a)(2) and 9-A M.R.S. § 8-208 | $ 4,000.00 |
| Damages awarded under 15 U.S.C. § 1640(a)(4) | $ 22,312.50 |
| Attorney's fees | $ 32,181.10 |
| TOTAL | $ 58,493.60 |

    d.    Setting off the Total in 34(c) above against the Total in 34(b) above, results in a net amount of $214,193.59 owing to Plaintiff under the terms of the First Note and the First Mortgage as of October 21, 2011.

35.    Pursuant to 14 M.R.S. §§ 1602-B and 1602-C (2011), the prejudgment interest rate is 16.5% and the post-judgment interest rate is 16.5% per annum. Accordingly, additional interest is accruing on the principal balance from October 21, 2011 at the rate of 16.5% per year, which is equal to $81.37 per day. Plaintiff is entitled to add any additional amounts advanced by him to protect his mortgage security, as well as any additional costs, including reasonable attorney's fees, he incurs in foreclosing upon the First Mortgage through the sale and filing of report of sale.

36.    Based upon the foregoing, as well as the Decision, it is further found that:

    a.    As of October 21, 2011, Plaintiff was owed the following under the terms of the Second Note and the Second Mortgage:

| | |
|---|---|
| Principal balance | $ 50,000.00 |
| Accrued interest | $ 23,695.93 |
| TOTAL | $ 73,695.93 |

14

b. From the foregoing, Defendant is entitled to offset the following amounts:

| | |
|---|---|
| Damages awarded under 15 U.S.C. § 1640(a)(2) and 9-A M.R.S. § 8-208 | $ 4,000.00 |
| Damages awarded under 15 U.S.C. § 1640(a)(4) | $ 21,949.98 |
| TOTAL | $ 25,949.98 |

c. Setting off the Total in 36(c) above against the Total in 36(b) above, results in a net amount of $47,745.95 owing to Plaintiff under the terms of the Second Note and the Second Mortgage as of October 21, 2011, with additional interest accruing on the principal balance from that date at the rate of 13.4% per year, which is equal to $21.02 per day.

37. As of October 21, 2011, Palisades Collections, LLC ("Palisades") is owed the sum of $3,929.09 by virtue of a writ of execution (the "Writ") against Defendant dated March 27, 2007 held by Palisades, which Writ was recorded in the York County Registry of Deeds (the "Registry") at Book 15121, Page 401. Additional interest is accruing at the rate of $.68 per date after that date.

The order of priority of claims of all parties who have appeared in this case is as follows:

FIRST: Plaintiff by virtue of the First Mortgage for the net amounts set forth in ¶ 34(d) above.

SECOND: Palisades by virtue of the judgment lien arising from the recordation of the Writ in the Registry for the amounts set forth in ¶ 20 above.

THIRD: Plaintiff by virtue of the Second Mortgage for the net amounts set forth in ¶ 36(d).

FOURTH: One half of the surplus to Defendant and one half of the surplus to Plaintiff, unless Defendant files a timely motion pursuant to 14 M.R.S. § 6324, in which event any surplus shall be allocated in the context of that motion.

38. The Clerk has entered default against Pinnacle Credit Services, LLC for failure to appear.

WHEREFORE, it is hereby ordered and decreed that final judgment be entered as to all claims and parties in this case as follows:

1. Judgment is hereby granted to Plaintiffs against Defendant Marlene Charron on their complaint for foreclosure.

2. Judgment by default is hereby granted to Plaintiffs against party-in-interest Pinnacle Credit Services, LLC.

3. Judgment is hereby granted to Defendant Marlene Charron against Plaintiff David Bordetsky on her First and Second Counterclaims.

4. Judgment is hereby granted to Plaintiff David Bordetsky on Defendant's Third and Fourth Counterclaims.

5. Judgment is hereby entered for the remaining parties, Lawrence P. Mcmanus, Jr., Gregory Koutrelakos, Jane M. Dugas, Walter W. Cheney, Trustee of the Floros Realty Trust, and Thomas J. McShera, Trustee of the Kathleen M. McShera 1994 Trust, and PNF Realty, Inc. on all of Defendant Marlene Charron's Counterclaims and on her Third-Party Complaint.

IT IS HEREBY FURTHER ORDERED AND DECREED AS FOLLOWS:

A.     If Defendant does not pay Plaintiff the net amounts due under the terms of the First Mortgage as set forth in ¶ 34(d) above, including accrued interest, late charges, costs and fees as set forth therein, within ninety days of the date hereof, Plaintiff shall simultaneously sell both his interest in the Property and that of Defendant pursuant to 14 M.R.S. §§ 6321-25 and disburse the proceeds of said sale after deducting the expenses thereof, in the amounts and priorities as determined above, except that any surplus shall be held in escrow by Plaintiff's counsel and shall not be disbursed until the report of sale has become final for purposes of 14 M.R.S. § 6324.

16

B.     Plaintiff is granted exclusive possession of the Property upon expiration of the statutory ninety (90) day redemption period and Defendant is ordered to vacate the Property at that time if Defendant has not by that date redeemed the Property in accordance with statutory procedure.  A Writ of Possession shall be issued to Plaintiff for possession of said real estate if it is not redeemed, as aforesaid.

C.     After all proceeds of said sale are disbursed, Plaintiff shall not be entitled to collect any remaining amounts owing under the terms of the First Note, the First Mortgage, the Second Note, or the Second Mortgage as a personal liability of Defendant and, notwithstanding the provisions of 14 M.R.S. § 6324, Plaintiff shall not be entitled to the assessment of any deficiency against Defendant and no execution will be issued therefore. After all proceeds of sale have been disbursed or after this Judgment has become final, whichever occurs later, Defendant shall be entitled to a satisfaction of judgment from Plaintiff on request.

D.     The following provisions are set forth pursuant to 14 M.R.S. § 2401:

1.     The names and addresses, if known, of all parties to the action, including the counsel of record, are set forth in Schedule A attached hereto.

2.     The docket number is BCD-RE-10-08.

3.     The Court finds that all parties have received notice of the proceeding in accordance with the applicable provisions of the Maine Rules of Civil Procedure.  Such notice was not given pursuant to an order of court.

4.     The street address and a description of the real estate involved are set forth in Schedule B attached hereto.

5.     Plaintiff is responsible for recording the attested copy of the judgment and for paying the appropriate recording fees.

6.     The Clerk is specifically directed pursuant to M.R.Civ.P. Rule 79(a) to enter this Judgment on the civil docket by a notation incorporating it by reference.

DATED: 30 January 2012

17

A. M. Horton
Justice, Business and Consumer Court

Date entered in the docket book: 31 JAN. 2012

SCHEDULE A

| Name and Address of Party | Name and Address of Counsel |
|---|---|
| David Bordetsky<br>5 Riverdale Avenue<br>Dover, NH 03820 | F. Bruce Sleeper, Bar No. 710<br>Jensen Baird Gardner & Henry<br>Ten Free Street<br>P.O. Box 4510<br>Portland, Maine 04112 |
| Marlene Charron<br>456 Atlantic Avenue<br>Wells, Maine 04090 | Michael J. O'Toole, Bar No. 3160<br>Woodman Edmands Danylik &<br>Austin, P.A.<br>P. O. Box 468<br>Biddeford, ME 04005-0468 |
| Palisades Collection, LLC<br>c/o CT Corporation System<br>One Portland Square<br>Portland, ME 04101 | Stanley Greenberg, Bar No. 1409<br>97A Exchange Street, Suite 404<br>Portland, ME 04101 |
| Pinnacle Credit Services, LLC<br>7900 Highway 7<br>St. Louis Park, MN 55426 | |

## SCHEDULE B

The street address of the property is 456 Atlantic Avenue, Wells, Maine.

The property is described as follows:

A certain lot or parcel of land, together with the buildings thereon, situated at Wells Beach, in the Town of Wells, in the County of York and State of Maine, and lying on the northwesterly side of the extension of Atlantic Avenue, and being a portion of Lot No. 312 as shown and delineated on Plan of Wells Beach Improvement Co., Sec. 3, which plan is on file in the York County Registry of Deeds, in Plan Book 12, Page 50. Said lot is otherwise bounded and described as follows, to wit: Beginning at the northeasterly corner of Lot No. 311 as shown on said Plan at a point in the northwesterly sideline of a 22-foot right-of-way, known as the Extension of Atlantic Avenue; thence running northeasterly along the northwesterly sideline of said right-of-way thirty-five (35) feet to land hereinafter described; thence turning and running northwesterly along said other land hereinafter described, sixty (60) feet, more or less, to the southeasterly sideline of a 16 foot right-of-way; thence turning at right angles and running southwesterly along the southeasterly sideline of said 16-foot right-of-way, 30 feet to the northwesterly corner of said Lot No. 311 (land of one Waddington); thence turning and running southeasterly along the northeasterly sideline of said Lot No. 311, 64 feet, more or less, to said Extension of Atlantic Avenue and the point of beginning.

Also, another certain lot or parcel of land, together with the buildings thereon, situated at said Wells Beach, and bounded and described as follows: Beginning at the northeasterly corner of land above described at a point in a 22-foot right-of-way, commonly known as the Extension of Atlantic Avenue; thence running northeasterly along the northwesterly sideline of said 22-foot right-of-way 12 feet to land now or formerly of Leon J. Campbell; thence turning and running northwesterly along said land of Campbell 58 feet, more or less, to a 16 foot right-of-way; thence turning and running southwesterly along the southeasterly sideline of said 16 foot right-of-way, 12 feet to the northwesterly corner of land above described; thence turning and running southeasterly along said land above described 60 feet, more or less, to said 22-foot right-of-way and the point of beginning. Being a portion of Lot No. 312 as shown and delineated on Plan of Wells Beach Improvement Co., Sec. 3, which Plan is on file in said Registry, Plan Book 12, Page 50.

The within described premises are conveyed together with the use of the various private rights-of-way set forth on said Plan and established for the common use and benefit of the Grantee, her heirs and assigns, and all other persons who may have a similar right and privilege in said rights-of-way.

The within described premises are conveyed subject to the following restrictions and conditions, to wit: That sewerage disposal shall be by septic tank, at least, until a public sewer is provided for; and that no building or other structure or any part thereof shall be built nearer than 15 feet from the northwesterly sideline of said Extension of Atlantic Avenue.

# CERTIFICATE OF CLERK

The final judgment was entered on the docket on _____ .

    I hereby certify that

    ___ the applicable appeal period has expired without action

    ___ the final judgment has been entered after remand following appeal.

Dated:                       _____

                                 Clerk